UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILDRED LEE BANFORD,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZAI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:21-cv-00785-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act.  ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 12, 14, 15.  The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).   ECF No. 9.  For the reasons provided below, plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.

**I.     Background**

In December 2018, plaintiff applied for supplemental security income (SSI) under Title XVI of the Social Security Act (Act), alleging that she became disabled on January 1, 2018 because of hand tendinitis, migraine headaches, neck pain, lower back pain with muscle spasms,

/////

and bilateral shoulder pain.[1] ECF No. 11, Administrative Record (AR) 15, 262. Plaintiff's applications were denied initially and upon reconsideration. AR 124, 137. After a July 2020 hearing before administrative law judge (ALJ), at which plaintiff was represented by counsel, the ALJ issued a decision on September 24, 2020, finding plaintiff not disabled. AR 15-22.

At the hearing, plaintiff testified that she was born in 1963 and had previously worked as a youth counselor at the Sacramento Children's Home. AR 34, 36, 57-58. She testified that, on the alleged disability onset date, January 1, 2018, she was in a car accident.[2] AR 35. Plaintiff testified that she had difficulty standing, walking, climbing stairs, squatting, and bending. AR 39. She testified that her neck was tight and stiff and that she had injured her rotator cuffs in both

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

[2] *See* AR 20 (noting low impact accident "when a vehicle backed into the front of her car on January 5, 2018").

2

shoulders, which made it difficult to reach, grab, and write. AR 39-40. Plaintiff reported that she had undergone four back procedures since the car accident and was going to have a fifth procedure on her neck. AR 41. She testified that she experienced painful back spasms that lasted from 45 minutes to a few hours, and that she used a cane in her home, though it was not prescribed. AR 43-44, 47; *see also* AR 19 (summarizing plaintiff's testimony).

Vocational expert (VE) Brian Bierley testified that plaintiff's previous job as a youth counselor was classified under the Dictionary of Occupational Titles (DOT) as a social services aide (light, skilled, at Specific Vocational Preparation level (SVP) 6). AR 57-58. Mr. Bierley testified that an individual with plaintiff's assessed residual functional capacity could perform this job as customarily performed. AR 59-60.

The ALJ determined that plaintiff had not been under a disability during the period at issue, finding as follows:

1. The claimant has not engaged in substantial gainful activity since December 3, 2018, the application date.

2. The claimant has the following severe impairments: degenerative disc disease, osteoarthrosis and migraine headaches.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no climbing ladders, ropes, or scaffolds and no crawling; occasional balancing, stooping, kneeling, crouching, or climbing ramps or stairs; and must avoid concentrated exposure to extreme heat, noise and hazards such as unprotected heights and moving machinery.

5. The claimant is capable of performing past relevant work as a social services aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since December 3, 2018, the date the application was filed.

AR 17-22.

////

////

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. Claims

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred in discounting plaintiff's subjective complaints; (2) the ALJ failed to adequately develop the medical opinion evidence; (3) the ALJ failed to account for the functional impact of plaintiff's obesity; and (4) the ALJ erred in concluding that plaintiff did not have a severe mental impairment.

## IV. Analysis

A. Subjective Complaints

Plaintiff argues that the ALJ improperly discounted her subjective statements about disabling musculoskeletal impairments and pain. As summarized by the ALJ, plaintiff alleged

> disability due to pain and range of motion deficits in her neck, back, and joints as well as frequent migraine headaches. . . . The claimant reported difficulty with prolonged standing. She reported her left leg

4

> would go numb. . . . In a typical week, she reported a back spasm four to five times a week. . . . Her neck was stiff and she reported popping and cracking in her neck. She reported pain and range of motion limitations in her bilateral shoulders. . . . She also reported she suffered from migraine headaches several times a week. . . . She had difficulty with activities of daily living including driving, personal care and hygiene, preparing meals, and performing light household chores due to her musculoskeletal and migraine symptoms.

AR 19. The ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 19.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See*, *e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). The Ninth Circuit has clarified that, when discounting subjective testimony, an ALJ must provide "specific, clear, and convincing reasons for doing so." *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), citing *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

*Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, the ALJ first considered objective evidence consisting of diagnostic images of plaintiff's cervical spine, lumbar, and shoulder, which "indicate the presence of impairments." AR 20 (citing cervical spine, lumbar, and shoulder MRIs showing mild to moderate changes in spine and left shoulder). *See* AR 347, 406-418, 499, 532, 769-79, 785, 792. Plaintiff argues that "the ALJ failed to consider or discuss a majority of the objective medical evidence," including examination findings showing reduced and painful range of motion in plaintiff's cervical and lumbar spine, tenderness to palpation and muscle spasms, positive impingement signs, and reduced shoulder strength. ECF No. 12 at 16. The ALJ did note some exam findings in his credibility discussion, including April 2020 exam notes in which "[c]linical findings were significant for range of motion deficits in the cervical spine, painful but symmetric range of motion in the bilateral shoulders." AR 20, citing AR 755-759. The ALJ also cited an April 2, 2019 physical examination in which plaintiff's range of motion in all extremities was normal. AR 20, citing AR 703-704.

However, the ALJ's credibility discussion largely focused on the "conservative treatment" plaintiff received. *See* AR 20-21. "[D]espite the presence of impairment with accompanying reports of pain," the ALJ wrote, "the medical treatment records reflect generally conservative treatment for the claimant's spine and joint symptoms." AR 20. The ALJ listed the following examples of plaintiff's "generally conservative treatment" for spine and joint symptoms: acupuncture, chiropractic adjustments, stretching, and home exercises. AR 20. The ALJ also noted that plaintiff's pain symptoms were "managed with injection and pain medication," citing April 2020 treatment records. AR 20, citing AR 755-758.

Plaintiff argues that her course of treatment for musculoskeletal pain was not "conservative" but aggressive and varied, and did not undermine her allegations of pain. She was prescribed multiple pain medications and injections as part of a multi-year regimen to lessen pain

in her spine and extremities. These medications included Gabapentin, Baclofen, Toradol, Cymbalta, and a strong steroidal medication, Prednisone. AR 346, 455, 506, 511, 514, 542. She received both Toradol and ketorolac injections. AR 493. She underwent multiple procedures for pain management, including a lumbar epidural steroid injection (AR 591), multiple sacroiliac (SI) joint injections (AR 767, 783-784), multiple medial branch injections (AR 539, 547, 783-784), a hip injection (AR 793), and bilateral shoulder injections (AR 533, 542, 771). In addition to her regimen of pain medications and injections, plaintiff underwent chiropractic treatment, physical therapy, and acupuncture. *See* AR 20.

In assessing a claimant's credibility, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an over-the-counter pain medication." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Where treatment advances to stronger, prescription medications the issue becomes more complicated. In *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017), the Ninth Circuit held that the ALJ "erred in rejecting [plaintiff's] testimony on account of the supposedly 'conservative' treatment she received." The circuit court continued:

> Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated. Revels received facet and epidural injections in her neck and back, as well as steroid injections in her hands. She was prescribed a variety of medications for her pain, including Valium, Vlector, Soma, Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica. The ALJ provided no explanation why he deemed this treatment 'conservative' for fibromyalgia. We have previously 'doubt[ed] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.'

*Id.*, citing *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014). *See also Gilliland v. Saul*, 821 Fed. Appx. 798, 799 (9th Cir. Sept. 11, 2020) (ALJ erred by rejecting medical opinion as unsupported by claimant's "routine and conservative treatment, where he pointed to no evidence that [the claimant's] treatment, which included several pain medications and trigger point injections, was "conservative."); *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal.

/////

7

2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment'") (collecting cases).

Here, the ALJ erred by characterizing plaintiff's treatment for spinal and joint pain as "conservative." The error was not harmless. Rather, this factor appears to have been decisive in the ALJ's rejection of plaintiff's complaints of debilitating body pain, which, if credited, could have resulted in a different RFC. Plaintiff is entitled to summary judgment on this claim.[3]

## V. Conclusion

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed,

---

[3] Because remand on this ground is appropriate the Court does not reach the remaining claims.

8

including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

### VI. Order

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is denied;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: September 22, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE